IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLORADO

Civil Action No. 1:14-cv-00914-JLK

**JENNIFER R. SCHMIT**,

     Plaintiff,

v.

**SKYWEST AIRLINES, INC.**,

     Defendant.

---

## [PROPOSED] STIPULATED SCHEDULING AND DISCOVERY ORDER

---

## 1. DATE OF CONFERENCE

The Scheduling and Discovery Conference was held on August 5, 2014, at 10:00 a.m.  Attorney Kimberlie K. Ryan of the Ryan Law Firm, LLC, 1640 E. 18th Avenue, Denver, CO, 80209, (303) 355-0639, appeared for the Plaintiff Jennifer Schmit.  Attorneys Vance O. Knapp and Tanya A. Sevy of Sherman & Howard L.L.C., 633 Seventeenth Street, Suite 3000, Denver, CO (303) 299-8162 appeared for Defendant SkyWest Airlines, Inc.

## 2.  STATEMENT OF CLAIMS AND DEFENSES

a.  **Plaintiff's statement**:  Defendant SkyWest Airlines, Inc. violated Title VII of the Civil Rights Act of 1964, *as amended*, by retaliating against Ms. Jennifer Schmit after she sought help from the company to stop the sexually-aggressive and threatening behaviors of a co-worker, Mr. David Phillips, who was harassing Ms. Schmit via FaceBook, text messaging, and telephone, and who was engaging in inappropriate behaviors toward another female employee; all of which created a sexually-based hostile work environment toward Ms. Schmit.   Defendant also engaged in direct sex discrimination and retaliatory hostile environment as set forth in the Complaint and as summarized below.

**Ms. Schmit Seeks Title VII Help in May – SkyWest  Disciplines Her in June - Terminates Her in August**.  Ms. Schmit started making reports of sexual harassment to SkyWest management in early May 2012, first speaking to her immediate supervisor, Debby Tracy; then as the harassing behaviors increased after Ms. Tracy spoke with Mr. Phillips and another employee, Ms. Lisa Kyser, Ms. Schmit reported it to another manager, Ms. Luz Santana.  Ms. Schmit then spoke with Department Manager, Mr. Dan Everett, in May.  He directly participated in her discipline in June and her termination in August.

**SkyWest Takes Immediate Adverse Actions**.  Instead of helping her, as the law requires, SkyWest turned against Ms. Schmit after she reported sexual harassment.   "Blaming the victim," SkyWest falsely accused Ms. Schmit of having an extra-marital affair with her harasser, itself a discriminatory response by SkyWest toward a married woman and mother of two, who had been kind and friendly to a man, who distorted her kindness and tried to sexualize it.

When he crossed the line, Ms. Schmit told Mr. Phillips to stop communicating with her, and she even met him outside the workplace to tell him that his conduct was inappropriate and that it was not welcome.  In response to Ms. Schmit's requests and reports to management, Mr. Phillips exhibited extreme anger and threatened Ms. Schmit.  No action was taken by management to investigate or stop these behaviors, and incredibly, SkyWest subsequently characterized Ms. Schmit's morning meeting with Mr. Phillips to ask him to "stop" as a "date."

**Ms. Schmit Reports to SkyWest Again**. When Mr. Everett finally met with Ms. Schmit after she had made several reports to SkyWest, she again reported Mr. Phillips' escalating behaviors and FaceBook and text messages that were scaring her.  The next time he spoke with her, Mr. Everett advised her that Mr. Phillips would not be working there any longer, and he told her that in light of this development, she had the option of closing out the sexual harassment investigation

or continuing it.

**Ms. Schmit Accepts SkyWest's Offer to Close Investigation**.  Because she was scared of Mr. Phillips, and because it appeared that the matter would be concluded with his departure from the company and purported departure from the country to England, Ms. Schmit indicated in response to Mr. Everett's offer that she preferred to close it out.

**SkyWest Disciplines Ms. Schmit in June Retaliation for her Reports**. Unbeknownst to Ms. Schmit, however, Mr. Everett did not close out the investigation as he had represented to her, but instead he concluded the investigation and falsely claimed that she would not provide the back up information for her claims.  When she then tried to provide the information, she was advised that if she did, *she* would be found "guilty" of retaliation.   SkyWest disciplined her.

**SkyWest, the Scarlet Letter, and the Kangaroo Court**.  SkyWest thus effectively created a no-win situation for Ms. Schmit.  On one hand SkyWest maliciously labeled her an adulteress and a violator if she did not provide the back-up information; and on the other hand, SkyWest threatened to find her guilty of retaliation if she tried to defend herself by providing the information.

4

In addition to emblazoning her with the Scarlet Letter by defaming her and casting aspersions on her marital fidelity and professional conduct, within weeks SkyWest also falsely accused Ms. Schmit of FAA violations and violations of company policies, in an effort to create a pretextual "legitimate business reason" for her termination.  She denies the false accusations that she somehow tried to manipulate flights for her benefit, and the evidence will show that she actually took a flight that was not full and had instructed another employee not to overbook flights as a practice that could subject SkyWest to problems with its contracts, such as United Airlines and others.  SkyWest followed up the false accusations of FAA violations with a sham investigation into Ms. Schimt's claims, a retaliatory investigation against Ms. Schmit herself, an internal-kangaroo-court which generated further retaliation by subjecting her to scrutiny by her "peers" in an inherently flawed "internal appeal process," and the ultimate culmination of the retaliatory hostile work environment with the termination of her career and employment in a humiliating fashion.

**SkyWest Creates Pretextual Excuse for Retaliatory Termination**.

SkyWest's pretext and causation are revealed in several ways, including: 1) the temporal proximity of less than 3 months between Ms. Schmit's requests for help and SkyWest's termination of her – and even closer temporal proximity between her protected activities and the campaign of harassment that started almost

5

immediately after her reports; 2) SkyWest's departures from its own policies and practices; 3) explanations by SkyWest that lack credence and are unworthy of belief; 4) comparators who were not similarly disciplined for similar or more egregious allegations; and 5) direct evidence of the company's knowledge of the predicate hostile work environment, including a manager's response that "he just wants to get into your pants," when Ms. Schmit reported Mr. Phillips' hostile work environment; and 6) other evidence expected to be established and introduced at trial.   Additionally, HR had already made it clear to Ms. Schmit that it preferred not to deal with sexual harassment complaints.  Just months before Ms. Schmit's reports, someone else had lodged a complaint against a SkyWest VP, which HR referred to as  "the Grievance of all Grievances."

**<u>SkyWest is Strictly Liable for Substantial Damages</u>**.  SkyWest is strictly liable for the retaliatory hostile work environment created by Corporate, since it culminated in the termination of her employment.  *See Faragher/Ellerth*.  The damages in this case are substantial and ongoing.  Ms. Schmit, who now is 5 months pregnant and now is forced to request health insurance aid from the State in the form of Medicaid, lost her career, her financial stability, and her and her family's health insurance benefits as a consequence of SkyWest's Title VII violations.  Ms. Schmit had worked in the airline industry since she was 21 years old and had made a career at SkyWest.  She had progressed through the ranks,

nearly tripling her pay over a period of a few years, and was able to travel the world with her family, a substantial financial and emotional benefit, and an incentive for her to accept the pay rates offered by SkyWest.

SkyWest management also knew that after her husband had suffered a stroke, Ms. Schmit had transferred within SkyWest from her home in Montana to Colorado, in part, so she could help support her family and to obtain secure health insurance benefits; and in part, because she had career aspirations within SkyWest and the airline industry.

**Ms. Schmit Works Two Part Time Jobs and Has Tried Diligently to Mitigate Her Damages**.  When SkyWest fired her, Ms. Schmit had to return to her home town in Montana, where she had limited opportunities to mitigate her damages, and where she had nearly zero opportunities to continue her career in the airline industry.  She has made reasonable efforts to mitigate her damages, and has diligently attempted to find comparable work.  In the face of the dearth of comparable positions, Ms. Schmit has taken on two part-time jobs, one in a restaurant establishment in a nearby town, and the other as a PRN in the Emergency Room for a regional hospital.  Neither job has provided the kind of financial or career opportunities that Ms. Schmit had at SkyWest.

7

**Ms. Schmit Continues to Suffer Damages**.  Ms. Schmit is severely damaged by SkyWest's Title VII violations, including the loss of her income, health insurance, and other benefits, including valuable travel passes; loss of her career; injuries to her reputation; emotional harm; and other financial and non-monetary losses.   Additionally, Ms. Schmit has had to suffer the personal humiliation of having to repeatedly explain in her small town that she no longer works for the airline when curious people see her and directly ask how things are at SkyWest.

**Damages Continue**.  It has been nearly two years since SkyWest's termination of her employment, and Ms. Schmit still suffers the consequences today.   She likely will suffer the economic impacts far into the future. This Court has jurisdiction over this federal question case pursuant to Title VII of the Civil Rights Act of 1964, as amended, and she seeks all remedies available to her under the law, including back pay, front pay, benefits, non-pecuniary damages, punitive damages, costs, attorneys' fees, interest, and remedial and equitable relief, including ongoing monitoring and compliance, and other equitable relief as allowed by law and justified by this case.

b.      Defendant's statement:

Defendant SkyWest Airlines, Inc. ("SkyWest" or "Defendant") employed Plaintiff Jennifer Schmit ("Schmit" or "Plaintiff") as a Customer Service

Supervisor at Denver International Airport ("DIA") in Denver, Colorado from April 24, 2004 to August 15, 2012.

On May 16, 2012, Lisa Kyser ("Kyser"), a co-worker of Plaintiff's, complained to Dan Everett ("Everett"), SkyWest's Manager of Customer Service at DIA, about Plaintiff's unproductive and unprofessional conduct while at work. In particular, she reported that Plaintiff created a hostile work environment.  A significant part of  Kyser's complaint was based on Plaintiff's interactions with David Phillips ("Phillips"), a subordinate employee to both Plaintiff and Kyser. Later on May 16th, Everett met separately with Kyser, Phillips, and Plaintiff. During her meeting with Everett, Plaintiff claimed that Phillips was sexually harassing her.

After receiving Plaintiff's complaint, SkyWest conducted a prompt and thorough investigation of her claims.  Plaintiff was informed that in order for SkyWest to conduct the most thorough and comprehensive investigation, she should provide any evidence she may have to support her claims of harassment (she was also counseled to call the police if she felt threatened).  However, Plaintiff was either unwilling or unable to provide SkyWest with copies of the alleged Face Book posts and text messages that Phillips purportedly sent her, that may have corroborated her sexual harassment allegations.  Also, at the commencement of the investigation, SkyWest placed Phillips on administrative

9

leave, to ensure that Plaintiff felt safe and comfortable, pending the results of

SkyWest's investigation into Plaintiff's harassment claims.  Prior to being placed

on administrative leave, Phillips submitted his two weeks' resignation notice to

SkyWest.

During the investigation, SkyWest discovered that Plaintiff went on a date

with Phillips, a subordinate employee, and also engaged in unprofessional conduct,

including inappropriate conversations with co-workers and subordinate employees.

SkyWest also found that Kyser's conduct violated company policies.  Plaintiff and

Kyser both received written disciplinary warnings.  Plaintiff never provided any

corroborating evidence for her sexual harassment claim; thus, SkyWest was unable

to corroborate her allegations.  Nevertheless, Phillips, the purported harasser, was

no longer employed by the company.  Although, Phillips was eligible for rehire, if

Plaintiff would have provided any evidence to corroborate her sexual harassment

allegations, Phillips' eligibility for rehire would have been subject to change.

On July 31, 2012, Plaintiff wanted to fly to Kalispell, Montana from DIA.

Earlier that day, a flight to Missoula, Montana, was cancelled, necessitating the

rebooking of passengers on the flight to Kalispell, Montana.  The rebooking

resulted in a full flight.  As a SkyWest employee, Plaintiff received travel benefits

consisting of free travel for herself and a companion, but only on a standby basis.

Under express SkyWest policy, employees and their companions flying standby

are not permitted to "bump" revenue paying customers from seats.  Plaintiff had

previously received copies of SkyWest's travel policies for employees and

companions, and she had been previously disciplined for engaging in similar

conduct.  Nevertheless, Plaintiff instructed subordinate SkyWest employees not to

rebook passengers on the Kalispell flight that she and her family were planning to

take.  Plaintiff abused her authority to benefit herself.

After receiving a complaint from a gate agent at DIA concerning this

incident, SkyWest conducted a thorough investigation, and found:

- Plaintiff had directed subordinate employees to avoid booking on a flight she hoped to take later as a standby passenger;
- Plaintiff mishandled the distribution of flight vouchers (coupons with a dollar value that passengers use towards future travel)—the investigation revealed that Plaintiff intentionally recorded incorrect information about these vouchers;
- Plaintiff directed a subordinate employee to put customers on a flight without a proper manifest—a violation of federal air regulations; and
- Plaintiff violated company policies related to record-keeping, standby travel, passenger booking and federal air regulations.

As a result of this improper conduct, SkyWest terminated Plaintiff's

employment on August 15, 2012.  Subsequently, Plaintiff appealed her

termination, and a SkyWest termination review board made up of two peer

employees and two supervisors unanimously upheld her termination after receiving

testimony and taking evidence from Plaintiff and Everett, her former supervisor.

Plaintiff's improper instructions to subordinate employees concerning preferential

booking of flights for her and her family was a legitimate business reason for the termination of her employment, and there is no causal connection between her engaging in a protected activity and the termination of her employment to establish a claim of retaliation.

All of SkyWest's employment decisions affecting Plaintiff were made for legitimate, nondiscriminatory, and non-retaliatory reasons.  SkyWest made all relevant decisions for reasons other than Plaintiff's sex and for reasons other than any protected conduct in which Plaintiff may have engaged.  In particular, the decision to terminate her employment was based on her violation of SkyWest's policies.  SkyWest would have made the same employment decision without regard to Plaintiff's sex or any protected conduct in which she may have engaged. SkyWest acted in reasonable and good faith compliance with applicable law, and without fraud, malice, willful or wanton conduct or reckless indifference to Plaintiff's rights.  SkyWest took reasonable steps to prevent, stop, and remedy any harassing conduct of which it knew, or reasonably should have known.  SkyWest also took reasonable care to avoid and eliminate discrimination and harassment of employees, and Plaintiff did not take reasonable steps to take advantage of SkyWest's safeguards to prevent or remedy harm.

Plaintiff has failed to mitigate her damages, if any, and her damages may be offset, in whole or in part, by her receipt of payments from other sources.  Any

damages Plaintiff receives are also subject to statutory damage caps.  Plaintiff's

claims may be barred, in whole or in part, by the statute of limitations and/or

failure to exhaust administrative remedies.

### 3.  UNDISPUTED FACTS

The following facts are undisputed:

a.      Plaintiff is female.

b.      SkyWest conducts business within the State of Colorado, and its

principal place of business is located at 444 South River Road, St.

George, Utah 84790.

c.      SkyWest is a Utah corporation and employs more than 50 employees.

d.      SkyWest is an "employer" as the term is defined at 42 U.S.C. §

2000e(b).

e.      Plaintiff is an "employee" as the term is defined at 42 U.S.C. §

2000e(f).

f.      SkyWest employed Plaintiff from April 23, 2004 to August 15, 2012.

At the time of her termination, Plaintiff was a Customer Service

Supervisor.

g.      Plaintiff made a report of alleged harassment by David Phillips on

SkyWest's Ethics and Compliance Employee Hotline.

h.      SkyWest investigated Plaintiff's allegations concerning David

13

Phillips.

i.     Dan Everett met with Plaintiff on June 6, 2012.

j.     SkyWest terminated Plaintiff on August 15, 2012.

## 4.  COMPUTATION OF DAMAGES

**Plaintiff estimates Defendant's current exposure to exceed $1.725 million**.  This figure accounts for damages caps and is considered a conservative estimate based on current information.  Plaintiff's Total Computation of Damages at this time **exceeds $672,500.00**, as detailed below.  This does not include $400,000.00 estimated litigation costs for Plaintiff's costs and fees, nor  does it include Defendant's stated estimate of $200,000.00.

*Lost Wages* – current estimate is approximately $80,000, for two years' lost wages - based on prior earnings at SkyWest; still need discovery on subsequent personnel actions and raises, etc.  Mitigation deduction is approximately $15,000.00.  Total lost wages to date after mitigation is estimated at **$65,000.00.**

*Lost Benefits* – current estimate is $40,000-$80,000 annually – this includes health benefits and unlimited family travel passes – need discovery from Defendant.  May request 5 years or more.  **$200,000.00**

*Front Pay* – current estimate is based on 5 year request at $20,000.00 per year - after estimated reduction for mitigation; request may increase, depending on potential expert evaluation - **$100,000.00**

*Non-Pecuniary Losses* – emotional and reputational harm, loss of enjoyment of life – full damage caps - Title VII **$200,000-$300,000**

*Costs* – To be determined – to date – approximately **$2,000.00**

*Attorneys Fees* – To be determined

*Interest* – To be determined – at this time, assuming 8%, estimated interest on total amount of lost wages - **$5,200.00**

*Equitable Relief* – Anticipate request for compliance, posting, protocols, etc.

**Plaintiff will seasonably supplement as discovery continues.**

## 5.  REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER Fed. R. Civ. P. 26(f)

a.      Date of Rule 26(f) meeting: July 11, 2014.

b.      Names of each participant and each party represented: Kimberlie K. Ryan of the Ryan Law Firm, LLC appeared for Plaintiff Jennifer Schmit.  Vance O. Knapp and Tanya A. Sevy of Sherman & Howard, L.L.C. appeared for Defendant SkyWest Airlines, Inc.

c.      Proposed changes, if any, in timing or requirement of disclosures under Fed.R.Civ.P. 26(a)(1): The Parties do not propose any changes in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

d.      Statement as to when Rule 26(a)(1) disclosures were made or will be made: Rule 26(a)(1) disclosures will be made by July 30, 2014.

15

e.     Statement concerning any agreements to conduct informal discovery:

The Parties do not presently intend to conduct informal discovery.  The Parties will

continue to explore the propriety of conducting informal discovery.

f.     Statement concerning any agreements or proposals regarding

electronic discovery: The Parties have discussed the existence and availability of

electronically stored information.  Plaintiff believes that her claims will involve a

substantial amount of disclosure or discovery of information or records maintained

in electronic form, not limited to but including Defendant's computer systems,

mobile phones and electronic devices used by key individuals.  Defendant states

that it has e-mails, personnel files, and other business documents stored on its

computer system.  The Parties believe that electronically stored information will

include e-mails, text messages, and Facebook posts, as well as investigation and

disciplinary records.  Defendant has agreed to produce electronically stored

information in the format of PDF files.  Counsel for Plaintiff has advised

Defendant that she anticipates requesting certain types of electronically stored

information to be produced in a native format.  Counsel for the parties agreed that

the parties should be instructed, if they have not yet been so instructed, not to

destroy any electronically stored information, even if such information would

normally be destroyed pursuant to a document destruction or retention policy.

g.     Statement concerning any other agreements or proposals to reduce

16

discovery and other litigation costs: The Parties have no other agreements or proposals to reduce discovery and other litigation costs at this time.

h.      Statement regarding use of the unified exhibit numbering system: The Parties have agreed to the use of the unified exhibit numbering system.

i.      Each party shall set forth its anticipated costs of conducting this litigation, itemizing costs including travel and attorney fees for taking depositions, paralegal expenses, costs of preparations, costs of drafting written discovery, anticipated motions and costs of complying with discovery requests.

1.      Plaintiff:  Plaintiff anticipates the costs of conducting this litigation through trial and post-trial motions to <u>range from $200,000 - $400,000 or more,</u> as detailed below.  Plaintiff makes these estimates without the benefit of any preliminary discovery and may adjust upward or downward as the case progresses. This is a good faith estimate based on the information currently known.

Attorneys' fees for depositions – Estimated –

Plaintiff's Depositions - **$70,000.00** - ten depositions @ $350.00/hr. depo time 10 hours and 10 hours prep time - ($7000) – 10 hours prep per ($7000.00)

Defendant's Depositions – **$10,500.00** - 2 depositions – 20 hours attorney time to defend – 10 hours to prep – 30 hours @350.00/hr.

Paralegal expenses – **0 - $5000.00**

6 Expert Depositions (attorney time / expert time and reports) – **$84,000.00 -**

**$150,000.00**

Costs of Depositions – 15 Transcripts - **$20,000.00-$50,000.00**

Costs of Written Discovery – to prepare - **$7,000.00 – 10,000.00**

Anticipated Motions – Plaintiff's Motion for Summary Judgment as to Affirmative

Defenses - **$7,000.00-$10,000.00**

Discovery motions - **$25,000.00**

Defendant's Motion for Summary Judgment – Response - **$20,000.00**

Costs for Complying with Discovery Requests - **$15,000.00**

Trial Costs – subpoenas – etc.  **$5,000.00 - $10,000.00**

Mediation Costs -  **$10,000.00 -** $7,000 attorney's fees - $3,000 – mediators fees

Month before trial - **$35,000.00**

5-day jury trial - **$26,250.00**

Post trial motions - **$14,000.00**

*Like estimates for contracting and renovations, this estimate could double,*

*depending in part on the trial strategies and tactics employed by Defendant in*

*this case.*

        2.     Defendant:  Defendant provides the following generic

information concerning average costs of litigation, given the description of claims

and scope of discovery contained herein.  Defendant does not waive any attorney-

client privilege or the confidentiality of its attorneys' work product.  Generally,

Defendant anticipates the cost of conducting this litigation to be less than $200,000.

| Itemized Tasks | Type of Cost | Amount |
| --- | --- | --- |
| Preparing and Responding to Written Discovery | Attorney Fees | $6,000 |
| | Paralegal Fees | $1,500 |
| | Travel | $0 |
| Preparing to Take and Taking Depositions | Attorney Fees | $7,000 |
| | Paralegal Fees | $1,500 |
| | Travel | $0 |
| Motion for Summary Judgment--Preparation | Attorney Fees | $20,000 |

## 6. CASE PLAN AND SCHEDULE

The plan and schedule must include the following items:

**a.     Deadline for Joinder of Parties**

Plaintiff requests that this deadline be 90 days after the Scheduling Conference.  Defendant requests that the deadline be set for September 19, 2014.

EMPLOY/1135747.3

**b.**      **Deadline to Amend Pleadings**

Plaintiff requests that this deadline be 90 days after the Scheduling

Conference.  Defendant requests that this deadline be set for September 19, 2014.

**c.**      **Discovery Cut-off**

January 5, 2015.

**d.**      **Dispositive Motion Deadline**

February 5, 2015.

**e.**      **Expert Witness Disclosure**

(1)      Statement regarding anticipated fields of expert testimony, if

any: Plaintiff may designate an IT expert, economic expert, a

vocational expert, and/or an expert on emotional

distress/psychiatric expert.  Defendant may designate an

economic expert, a vocational expert, and/or a psychiatric

expert.

(2)      Statement regarding any limitations proposed on the use or

number of expert witnesses: Expert witnesses shall be limited to

four (4) for each party, without leave of Court.

(3)      The parties shall designate all experts and provide opposing

counsel and any pro se party with all information specified in

Fed. R. Civ. P. 26(a)(2) on or before November 14, 2014.

(4)     The parties shall designate all rebuttal experts and provide

opposing counsel and any pro se party with all information

specified in Fed. R. Civ. P. 26(a)(2) on or before December 15,

2014.

(5)     All designations of experts shall include a statement describing

the methodology to be used by the particular expert.

*Daubert/Kumho Tire* motions challenging any proposed

methodology may be considered before the expert is deposed.

Such a motion does not preclude the filing of any subsequent

motions.  The aim is to cut off faulty methodology before

undertaking extensive discovery and may result in amended

designation with either a new expert, a revised methodology or

both.

(6)     Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2), no

exception to the requirements of the rule will be allowed by

stipulation of the parties unless the stipulation is approved by

the court.

### f.    Deposition Schedule

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| **For the Plaintiff:** | | | |
| Pennie Hancock | To be determined | To be determined | To be determined |
| Dan Everett | To be determined | To be determined | To be determined |
| John Linginfelter | To be determined | To be determined | To be determined |
| Debby Tracy | To be determined | To be determined | To be determined |
| Art Hackman | To be determined | To be determined | To be determined |
| Jim Boyd | To be determined | To be determined | To be determined |
| David Phillips | To be determined | To be determined | To be determined |
| Todd Emerson | To be determined | To be determined | To be determined |
| Lisa Kyser | To be determined | To be determined | To be determined |
| 30(b)(6) – IT, HR, corp. | To be determined | To be determined | To be determined |
| Expert Depositions | To be determined | To be determined | To be determined |
| **For the Defendant:** | | | |
| Jennifer Schmit | To be determined | To be determined | To be determined |
| David Phillips | To be determined | To be determined | To be determined |

### g.    Interrogatory Schedule

All interrogatories shall be served no later than December 3, 2014, 33 days

before the discovery cut-off of January 5, 2015.

**h.      Schedule for Request for Production of Documents and Request**

**for Admissions**

All Requests for Production of Documents and Admissions shall be served

no later than December 3, 2014, 33 days before the discovery cut-off of January 5,

2015.

**i.      Discovery Limitations**

(1)      Any limits any party proposes on the length of any deposition:

The Parties do not request any modifications to the length of

deposition and they agree to abide by the limitations set out in

Fed. R. Civ. P. 30(d)(1).

(2)      Any modifications any party proposes on the presumptive

numbers of depositions or interrogatories contained in the

federal rules: The number of depositions shall be limited to ten

(10) per party.  The number of interrogatories shall be limited

to 30 per party.

(3)      Any limitations any party proposes on the number of requests

for production of documents and/or requests for admissions:

Requests for production of documents shall be limited to thirty

(30) per party, and requests for admission shall be limited to

23

thirty (30) per party.

**j.      Other Planning or Discovery Orders**

The Parties have no other planning or discovery orders at this time.

## 7.  SETTLEMENT

The Parties have discussed settlement of this case, but have not yet reached any agreements regarding settlement.  The Parties have also discussed the possibility of mediation and potential mediators.  At this time, the Parties do not request a settlement conference before a magistrate judge.

## 8.  OTHER SCHEDULING ISSUES

a.      Statement of those discovery or scheduling issues, if any, on which counsel, after a good faith effort, were unable to reach an agreement: There are no discovery or scheduling issues requiring the Court's intervention at this time.

b.      Statement of anticipated motions-to be filed, by whom, estimated time of filing, and any proposed briefing schedule:  The Parties anticipate moving for the entry of a Stipulated Protective Order for discovery.

c.      Statement whether trial is to the court or jury.  If a mixed trial, e.g. declaratory judgment and damages, specify which claims are to tried to a jury and which to the court: Plaintiff requests a jury trial as to all issues to triable.

## 9.  AMENDMENTS TO DISCOVERY AND SCHEDULING ORDER

This Stipulated Scheduling and Discovery Order may be altered or amended only upon motion showing good cause and order entered thereon.  As stated elsewhere herein, I will almost always grant stipulated motions for extensions of time and changes in deadlines up to and including the signing of a pretrial order.  If the parties cannot agree on such extensions, my inclination is, in the absence of abuse, to be permissive.  On the contrary, I am not permissive or lenient in changing trial dates.

DATED this __ day of _____, 2014.

BY THE COURT:

_____
JOHN L. KANE, Senior Judge
United States District Court

**STIPULATED SCHEDULING**
**AND DISCOVERY ORDER**
**APPROVED:**

_____          _____
Kimberlie K. Ryan                Vance O. Knapp
Ryan Law Firm, LLC               Tanya A. Sevy
1640 E. 18th Avenue              Sherman & Howard LLC
Denver, CO 80218                 633 Seventeenth Street #3000
(303) 355-0639                   Denver, CO 80202
                                 (303) 299-8162
Attorney for Plaintiff           (303) 299-8288

                                 Attorneys for Defendant

EMPLOY/1135747.3